**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| JOHN E. GALLUS et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) Civil Action No. 0:04-cv-4498 |
| v. | ) |
| | ) Honorable Donovan W. Frank |
| AMERIPRISE FINANCIAL, INC. (F/K/A | ) Magistrate Judge Susan R. Nelson |
| AMERICAN EXPRESS FINANCIAL | ) |
| CORPORATION), RIVERSOURCE | ) |
| INVESTMENTS LLC, and AMERIPRISE | ) |
| FINANCIAL SERVICES, INC. (F/K/A | ) |
| AMERICAN EXPRESS FINANCIAL | ) |
| ADVISORS INC.), | ) |
| | ) |
| Defendants. | ) |
| | ) |

**DEFENDANTS' MEMORANDUM ON REMAND**

Page

# TABLE OF CONTENTS

PRELIMINARY STATEMENT .................................................................................. 1

PROCEDURAL BACKGROUND ............................................................................ 2

      A.     This Court's Order Granting Summary Judgment ......................................... 3

      B.     The Court of Appeals' Decision.................................................................... 8

      C.     Proceedings Before the Supreme Court ....................................................... 9

ARGUMENT............................................................................................................. 11

  I.    The Supreme Court Adopted the Same *Gartenberg* Standard this Court Applied when Granting Summary Judgment to Ameriprise ................................. 11

  II.  The Rationale of the Eighth Circuit's Decision Does Not Survive the Supreme Court's Decision in *Jones* ..................................................................... 16

      A.     The Eight Circuit's Novel Process-Based Standard for Liability Under Section 36(b) Is Inconsistent with *Jones*.......................................... 17

      B.     The Weight the Eighth Circuit Attributed to the Comparison Between Mutual Fund and Institutional Account Fees Does Not Survive *Jones* ............................................................................................ 21

CONCLUSION .......................................................................................................... 25

i

# TABLE OF AUTHORITIES

## CASES

*Ameriprise Fin., Inc. v. Gallus*,
   130 S. Ct. 2340 (2010) .................................................................................... 9, 10

*Curran v. Principal Mgmt. Corp., LLC*,
   No. 4:09-cv-00433, 2010 WL 2889752 (S.D. Iowa June 8, 2010) ............................. 18

*Gallus v. Ameriprise Fin., Inc.*,
   370 F. Supp. 2d 862 (D. Minn. 2005) ............................................................................ 3

*Gallus v. Ameriprise Fin., Inc.*,
   497 F. Supp. 2d 974 (D. Minn. 2007) ................................................................... passim

*Gallus v. Ameriprise Fin., Inc.*,
   561 F.3d 816 (8th Cir. 2009) ................................................................................ passim

*Gallus v. Ameriprise Fin., Inc.*,
   No. 07-2945 (8th Cir. June 4, 2010) (judgment) ......................................................... 10

*Gartenberg v. Merrill Lynch Asset Mgt., Inc.*,
   694 F.2d 923 (2d Cir. 1982) .................................................................................. passim

*In re Am. Mut. Funds Fee Litig.*,
   No. cv 04-5593, 2009 WL 5215755 (C.D. Cal. Dec. 28, 2009) .................................. 19

*Jones v. Harris Assocs.*,
   130 S. Ct. 1418 (2010) ......................................................................................... passim

*Jones v. Harris Assocs.*,
   527 F.3d 627 (7th Cir. 2008) .............................................................................. 8, 17

*Pepper v. Litton*,
   308 U.S. 295 (1939) ........................................................................................... 11, 12

## STATUTES

Section 36(b) of the Investment Company Act, 15 U.S.C. § 80a-35(b) ................... passim

Pursuant to the Court's July 27, 2010 Order, Defendants Ameriprise Financial, Inc., Columbia Management Investment Advisers, LLC (formerly known as Riversource Investments LLC), and Ameriprise Financial Services, Inc. (collectively "Ameriprise") submit this memorandum addressing the appropriate action for the Court to take on remand from the Eighth Circuit and the order of the United States Supreme Court directing further consideration in light of its opinion in *Jones v. Harris Assocs.*, 130 S. Ct. 1418 (2010).[1]  As set forth below, Ameriprise respectfully submits that the Court should re-enter summary judgment for the defendants.

## PRELIMINARY STATEMENT

In *Jones*, the Supreme Court adopted the precise test for assessing claims under Section 36(b) of the Investment Company Act, 15 U.S.C. § 80a-35(b), that this Court applied to enter summary judgment for Ameriprise.  The Supreme Court unambiguously adopted the standard articulated in *Gartenberg v. Merrill Lynch Asset Mgt., Inc.*, 694 F.2d 923 (2d Cir. 1982), which limits liability to the rare circumstance where an adviser charges a fee "so disproportionately large that it bears no reasonable relationship to the services rendered and could not have been the product of arm's-length bargaining."  130 S. Ct. at 1429-30 (quoting *Gartenberg*, 694 F.2d at 928).  And the Supreme Court equally unambiguously rejected any expansion or modification of that test, including the Eighth Circuit's suggestion that *Gartenberg* supplied "*one* way . . . but not the *only* way" an

---

[1]  Based upon the Court's comments at the July 27, 2010 status conference, Ameriprise understands that the Court does not wish the parties to re-argue all of the points presented in the prior briefing and argument on Ameriprise's summary judgment motion.  Accordingly, Ameriprise respectfully incorporates here by reference its prior memoranda and exhibits in submitted in support of the motion.

adviser could breach its duty. *Gallus v. Ameriprise Fin., Inc.*, 561 F.3d 816, 823 (2009). According to the Supreme Court, *Gartenberg* "*fully* incorporates th[e] understanding of the fiduciary duty" imposed by Section 36(b), 130 S. Ct at 1427, rendering the judicial inquiry "sharply focused on the question of whether the fees themselves were excessive," *id.* at 1430 (quoting *Migdal v. Rowe Price-Fleming Int'l, Inc.,* 248 F.3d 321, 328 (4th Cir. 2001)).

Since the Eighth Circuit explicitly found that this Court "properly applied" the *Gartenberg* standard, 561 F.3d at 823, and since the appeals court's suggestion of alternatives to *Gartenberg* was definitively rejected, it follows that this Court's original application of *Gartenberg* must stand.   Simply put, in view of the Supreme Court's embrace of precisely what this Court did, nothing in the Eighth Circuit's "extra-*Gartenberg*" analysis has any further relevance.  To the contrary, what this Court did was confirmed as "proper" by the Eighth Circuit, and that conclusion was corroborated by the U.S. Supreme Court.   The Court should accordingly re-enter summary judgment for Ameriprise.

## PROCEDURAL BACKGROUND

The plaintiffs are shareholders in mutual funds (the "Funds") for which Ameriprise serves as investment adviser.  The plaintiffs' suit claimed that Ameriprise charged "excessive" investment advisory fees in violation of Section 36(b), which imposes upon an investment adviser a "fiduciary duty with respect to the receipt of compensation" for services to a mutual fund.

After Ameriprise moved to dismiss the plaintiffs' initial complaint, this Court ruled on March 7, 2005, that the pleading survived "by only the narrowest of margins." 370 F. Supp. 2d 862, 867.  The Court expressed skepticism about the plaintiffs' ability to support many of their unsubstantiated allegations, which were pled only upon information and belief.  *Id.*  After the completion of the discovery ordered by the Court, and after the plaintiffs twice amended their complaint to drop numerous allegations, Ameriprise moved for summary judgment.

## A.    This Court's Order Granting Summary Judgment

On July 10, 2007, the Court granted summary judgment to Ameriprise.  The Court analyzed the undisputed evidence under the standard articulated in *Gartenberg*, which was "the seminal case on section 36(b)," 497 F. Supp. 2d at 979, and which the plaintiffs themselves invoked in their original complaint, *see* Corr. Compl. ¶ 38 (Apr. 22, 2005).  As the Court noted, under that standard, "in order to violate section 36(b), an 'advisor-manager must charge a fee that is so disproportionately large that it bears no reasonable relationship to the services rendered and could not have been the product of arm's-length bargaining.'"  497 F. Supp. 2d at 979 (quoting *Gartenberg*, 694 F.2d at 928).

The Court recognized that *Gartenberg* called for consideration of "all pertinent facts" in assessing whether a fee was "so disproportionately large" it "could not" have been fairly bargained.   The Court's analysis accordingly adopted the rubric the *Gartenberg* court employed and looked at six non-exclusive "factors" relevant to the fee calculus, including (i) the nature and quality of the services provided by Ameriprise;  (ii) the profitability of the Funds to Ameriprise; (iii) any "fall-out" benefits that accrued to

3

the adviser from managing the Funds; (iv) economies of scale associated with growth in the assets under management;  (v) fees charged by Ameriprise for comparable services to other clients; and (vi) the independence and conscientiousness of the Funds' Board of Directors in negotiating the fees paid to Ameriprise.  *Id.* at 979.  The Court assessed each of these "*Gartenberg* factors" in light of the record evidence and concluded that the plaintiffs "raise[d] no genuine issue of material fact . . . that the fees could not have been the product of arm's-length bargaining." *Id.* at 980-84.

That conclusion was amply supported by the record.  The undisputed evidence established that the Funds' Board of Directors (the "Board") was well-qualified and diligent, and conducted robust negotiations with Ameriprise for the fees the Funds paid. The evidence showed that the Funds' Board reviews and approves annually the contracts that set fees for services.  To assist in making its annual decision, the full Board receives recommendations from its Contract Committee.  That committee met ten (10) times during the eighteen-month period in 2003 and 2004 before the plaintiffs filed this action. *Id.* at 975-77.  The independent directors on the Contracts Committee of the Board included Arne Carlson, former governor of Minnesota; Livio DeSimone, former Chairman and CEO of 3M Corporation; Dr. Stephen Lewis, retired president and professor of economics at Carleton College; and Alison Taunton-Rigby, president of Forester Biotech. Ex. B to Decl. of Chanel R. Dalal in Support of Defendants' Mot. for S.J., at 10, 25.  The other independent board members had similarly impressive backgrounds. *Id.*

4

To inform its fee negotiation, the Board received from Ameriprise and reviewed information related to numerous aspects of the Funds, including investment performance, personnel, Ameriprise's profits and expenses from its contracts with the Funds, transactions between Ameriprise affiliates and the Funds, and benefits Ameriprise receives from the Funds in addition to its fees.  497 F. Supp. 2d at 975-77.  The Board sought advice from independent counsel; retained KPMG as an independent third-party advisor; and received a report from Lipper, Inc., a third-party industry consultant, that compared the Funds' fees and investment performance with those of competitors.  *Id.* This report showed that each one of the Funds paid fees to Ameriprise *at or below* the median of peer group funds, while the Funds' performance generally fell within the first or second quartile of peer funds.  *Id.*  During these discussions, the Board also solicited from Ameriprise a report comparing the fees paid by the Funds with fees paid by institutional investor clients of Ameriprise, such as pension funds.  This report showed that institutional investors paid lower fees, and that they received fewer services from Ameriprise.  *Id.*

The Board negotiated contracts for the Funds that set the advisory fee as a percentage of the value of the assets held by each Fund.  The percentage decreased at scheduled "breakpoints" as Fund assets increased, *id.* at 975-77, which "served to share some economies of scale."  *Id.* at 982.  The Board also negotiated for and obtained a "Performance Incentive Adjustment" provision that increased Ameriprise's fee if investment performance exceeded the returns of comparable funds, but reduced the fee if performance lagged.  *Id.* at 977.

5

After recounting these undisputed facts, the Court proceeded to consider thoroughly each of the *Gartenberg* factors.

### Services provided and profitability

The Court observed that Ameriprise provided the Board with voluminous data about the advisory and administrative services the Funds received in exchange for Ameriprise's fees.  *Id*. at 980.  While the plaintiffs attempted to raise issues concerning the settlement of certain regulatory matters, the Court recognized that these issues were unrelated to Ameriprise's conduct as investment adviser.  Similarly, in response to the plaintiffs' characterization of the Funds' performance as "poor," the Court noted that the Board had negotiated a fee adjustment for poor performance.  *Id.*  Ameriprise also "provided detailed reports on its profitability to the Board."  *Id.* at 981.  The plaintiffs failed to point to any authority suggesting Ameriprise's method for measuring profitability was unreasonable.  *Id*.

### Fall-out benefits and economies of scale

Ameriprise also "provided the Board with a report that addressed the fall-out benefits it believed it enjoyed as a result of the advisory relationship," and "the Board considered the reports . . . when negotiating fees with Defendants."  *Id.* at 981.  The plaintiffs' view that the report should have included additional information about benefits to Ameriprise's institutional business did not create a genuine issue of material fact whether the fee could have been negotiated at arm's length.  *Id*.  The plaintiffs acknowledged that Ameriprise shared with the Funds millions of dollars in cost savings achieved through economies of scale.  *Id.*  Although the plaintiffs maintained that the

6

Funds should have enjoyed a greater share of the benefit, that contention was unsupported by any explanation why the amounts were not sufficient.  *Id.* at 981-82.

*Fee comparisons*

The Board also received reports comparing the fees charged to the Funds and services offered by Ameriprise with the fees and services for Ameriprise's institutional accounts, as well as the fees that other advisers charged to their mutual funds.  *Id*. at 982. Although the plaintiffs urged the Court to weigh heavily the fees Ameriprise charged to its institutional clients, the Court recognized that such a comparison lacked probative value if "the nature and extent of the services required by each type of fund was different."  *Id.*  "Plaintiffs ha[d] not demonstrated that the services provided to the different types of funds are comparable," whereas the defendants' evidence showed that the Board could have concluded "that the services provided to the Funds were different than those provided to the institutional clients."  *Id.*  Moreover, the Board sought out an analysis from an independent consultant comparing Ameriprise's fees to a relevant peer group, which the plaintiffs did not contest.  *Id.* at 982-83.

*Independence and diligence of the board*

With regard to the final *Gartenberg* factor, the Court observed that the Board, which was comprised of highly-qualified experts from academic, legal, and business settings, was independent of Ameriprise and acted independently; met regularly; actively participated in the fee negotiation with Ameriprise; engaged outside counsel and consultants for advice about the fees; and reviewed voluminous information from Ameriprise.  *Id.* at 983-84.  As a result, the Court concluded that the plaintiffs failed to

7

call into question the Board's care and conscientiousness.  *Id.*  Ameriprise's disclosures to the Board, coupled with the Board's negotiation techniques, obtained for the Funds investment performance that exceeded the median performance of peer funds, at the cost of fees below or equal to the median paid by peer funds.  *Id.* at 976-77.

The Court concluded, "[W]hether the fees could have been lower is not the question the Court is required to address under the applicable standard.  Because the evidence relating to the *Gartenberg* factors raises no genuine issue of material fact under section 36(b) that the fees could not have been the product of arm's-length bargaining," the defendants were entitled to summary judgment.  *Id.* at 984 (citation omitted).  The plaintiffs appealed.

### B.    The Court of Appeals' Decision

On appeal, the Eighth Circuit reversed.  *Gallus*, 561 F.3d 816.  The Court of Appeals recognized that "the district court properly applied the *Gartenberg* factors."  *Id.* at 823.  The panel nonetheless reversed the grant of summary judgment because it held that "*Gartenberg* . . . demonstrates one way in which a fund adviser can breach its fiduciary duty; but it is not the only way."  *Id.*

The Court of Appeals noted that the Seventh Circuit had recently departed from *Gartenberg* in *Jones v. Harris Assocs.*, 527 F.3d 627 (2008), and emphasized the adviser's "duty to be honest and transparent throughout the negotiation process."  *Gallus*, 561 F.3d at 823.  The panel considered that "*Jones* highlights a flaw in the way many courts have applied *Gartenberg*."  *Id.*  The Court of Appeals concluded that a violation of Section 36(b) could be demonstrated if *either* "the fee itself constituted a breach of

fiduciary duty" under the traditional *Gartenberg* factors *or* "the adviser's conduct during negotiation" was improper under *Jones*.  *Id.*  "Unscrupulous behavior with respect to either can constitute a breach of fiduciary duty."  *Id.*

The Court of Appeals recognized that "Ameriprise's fee passed muster under the *Gartenberg* standard," which "the district court properly applied."  *Id.* at 823. Nonetheless, the panel reversed and remanded for application of the alternative, disclosure-based liability standard, holding that this Court "should have also considered other possible violations of § 36(b)" beside the size of the fee Ameriprise received.  *Id.* at 824.  In particular, the Eighth Circuit believed that this Court should have further examined disclosures to the Board about the fees Ameriprise charged to its institutional clients to determine "whether Ameriprise purposefully omitted, disguised, or obfuscated information that it presented to the Board about the fee discrepancy between different types of clients."  *Id.*

## C.   Proceedings Before the Supreme Court

Ameriprise petitioned for writ of certiorari.  Pet. for Writ of Cert., *Ameriprise Fin., Inc. v. Gallus*, 130 S. Ct. 2340 (2010) (No. 09-163).  The Supreme Court took no action on Ameriprise's petition while the *Jones* case was pending.  In its *Jones* opinion, the Supreme Court reaffirmed *Gartenberg* as "fully" reflecting the fiduciary duty imposed by Section 36(b) and rejected the contention that Section 36(b) could be violated by procedural shortcomings independent of a fee that violated "*Gartenberg*'s 'so disproportionately large' standard."  130 S. Ct. at 1427, 1430.

In their Supreme Court briefing, the *Jones* plaintiffs held up the Eighth Circuit's decision in *Gallus* as an example of a "similar, two-part fiduciary standard in interpreting § 36(b)," including a separate "requirement of full disclosure." Pet. Br. at 25, 33, *Jones*, 130 S. Ct. 1418 (No. 08-586). The Supreme Court rejected that argument and instead wholeheartedly endorsed *Gartenberg*'s standard, under which the plaintiff must prove that the adviser's fee was "so disproportionately large that it bears no reasonable relationship to the services rendered and could not have been the product of arm's length bargaining." *Jones*, 130 S. Ct. at 1426. The Court made clear that, under *Gartenberg*, no single factor – whether alleged deficiencies or misrepresentations in the negotiation process or an allegation that the fee charged to controlled clients was higher than what was charged to institutional clients – could be determinative. "*Gartenberg* insists that all relevant circumstances be taken into account. And *Gartenberg* uses the range of fees that might result from arm's-length bargaining as the benchmark for reviewing challenged fees." *Id*. at 1427 (citations omitted). *See id.* at 1428-29 (instructing that § 36(b) does not "ensure fee parity between mutual funds and institutional clients," and that courts "must reject" comparisons between such fees if the services "are sufficiently different that a comparison is not probative").

After deciding *Jones*, the Supreme Court granted Ameriprise's petition for certiorari, vacated the Eighth Circuit's judgment, and remanded. *Ameriprise*, 130 S. Ct. 2340. The Eighth Circuit remanded back to this Court "for further consideration in light of *Jones v. Harris*." *Gallus v. Ameriprise Fin., Inc.*, No. 07-2945 (8th Cir. June 4, 2010) (judgment).

10

## **ARGUMENT**

**I.** **The Supreme Court Adopted the Same *Gartenberg* Standard this Court Applied when Granting Summary Judgment to Ameriprise**

The Supreme Court adopted *verbatim* the nearly 30-year old standard for liability under Section 36(b) established in *Gartenberg*:   "[W]e conclude that *Gartenberg* was correct in its basic formulation of what § 36(b) requires." *Jones*, 130 S. Ct. at 1426; *see also id*. at 1427, 1428, 1429, 1430 (explicitly adopting *Gartenberg*).   Under that standard, the Supreme Court held, in order "to face liability under § 36(b), an investment adviser must charge a fee that is so disproportionately large that it bears no reasonable relationship to the services rendered and could not have been the product of arm's length bargaining."   *Id.* at 1426.   That is precisely the standard that this Court applied in granting summary judgment in favor of Ameriprise in the Court's July 2007 Opinion. 497 F. Supp. 2d at 979.

The Supreme Court was equally clear that the *Jones* plaintiffs' attempts to modify the *Gartenberg* standard in order to add a separate, "fair disclosures" test was not appropriate.   In adopting *Gartenberg*'s "so disproportionate" language so explicitly, the Supreme Court flatly rejected the plaintiffs' contention, ostensibly based on *Pepper v. Litton*, 308 U.S. 295 (1939), that the phrase "fiduciary duty with respect to the receipt of compensation" means that fees must be fair and "reasonable," *and* creates an independent duty of "full[] disclos[ure]."   *See* Pet. Br. at 17, 21-25, 36, *Jones*, 130 S. Ct. 1418 (No. 08-586).   Dispelling the plaintiffs' suggestion that Section 36(b)'s "fiduciary duty" requires more searching review of the board process than contemplated by *Gartenberg*'s

"so disproportionate" standard, the Supreme Court held: "The *Gartenberg* approach *fully*

incorporates th[e] understanding of the fiduciary duty as set out in *Pepper*." 130 S. Ct. at

1427 (emphasis added). After explaining that the circumstances surrounding a board's

negotiation must be examined, the Supreme Court stated:

> *Gartenberg* heeds these precepts. *Gartenberg* advises that
> "the expertise of the independent trustees of a fund, whether
> they are fully informed about all facts bearing on the
> [investment adviser's] service and fee, and the extent of care
> and conscientiousness with which they perform their duties
> are important factors to be considered in deciding whether
> they and the [investment adviser] are guilty of a breach of
> fiduciary duty in violation of § 36(b)."

*Id.* at 1428 (quoting *Gartenberg*, 694 F.2d at 930). The Supreme Court noted that in

assessing whether a fee was "so disproportionately large" that it "could not have been"

fairly bargained, courts should look at both the procedure the board used and the

substance of its decision. The opinion reiterated that such an inquiry is to be made as part

of the ultimate inquiry into whether "the fee 'is so disproportionately large that it bears

no reasonable relationship to the services rendered and could not have been the product

of arm's-length bargaining.'" *Id.* at 1429-30 (quoting *Gartenberg*, 694 F.2d at 928). In

that respect *Jones* reaffirmed that "*Gartenberg*'s 'so disproportionately large' standard

reflects [the] congressional choice to 'rely largely upon [independent director]

"watchdogs" to protect shareholder interests.'" *Id.* at 1430 (quoting *Gartenberg*, 694

F.2d at 928, and *Burks v. Lasker*, 441 U.S. 471, 485 (1979)). But it did not authorize

"process" reviews *independent* from the "so disproportionate" inquiry that serves as the

ultimate standard.

The Supreme Court's encapsulation of *Gartenberg* was equally pointed in rejecting the *Jones* plaintiffs' second argument – one echoed by the plaintiffs here – that a comparison between mutual fund fees and institutional account charges is dispositive. Repeating the traditional *Gartenberg* approach, the Supreme Court held that "courts may give such comparisons the weight that they merit in light of the similarities and differences between the services that the clients in question require, but courts must be wary of inapt comparisons." *Id.* at 1428. The Supreme Court warned that "there may be significant differences between the services provided," *id.* at 1428-29, and emphasized that "[i]f the services rendered are sufficiently different that a comparison is not probative, then courts must reject such a comparison," *id.* at 1429; *compare Gartenberg*, 694 F.2d at 930 n.3 (rejecting comparison because services and markets were not similar). *Jones* accordingly instructed that even where a comparison is relevant, "courts should be mindful that the Act does not necessarily ensure fee parity." 130 S. Ct. at 1429. The Court concluded that the comparison cannot be dispositive, as plaintiffs urged. To the contrary, absent other proof of breach of fiduciary duty, even where the services are similar this will not create a disputed issue of material fact. *Id.* at 1429 n.8 ("Only where plaintiffs have shown a large disparity in fees that cannot be explained by the different services *in addition to other evidence* that the fee is outside the arm's-length range will trial be appropriate.") (emphasis added). The same went for comparisons with other mutual funds: while the comparison may be relevant, "courts should not rely too heavily on comparisons with fees charged to mutual funds by other advisers" due to a

13

perceived lack of competition among advisers for the fund contract.   *Id.* at 1429 (citing *Gartenberg*, 694 F. 2d at 929).

This Court used the same traditional *Gartenberg* standard in its summary judgment opinion, having rejected the plaintiffs' argument that a different test should be used.   *See* 497 F. Supp. 2d at 979 n.8 ("Although Plaintiffs assert that *Gartenberg* does not set forth the appropriate test in this case, . . . the Court will analyze Plaintiffs' section 36(b) claims under the standard set forth in *Gartenberg*.").   And the Court evaluated those arguments by using the *Gartenberg* factors, just as prescribed by the Supreme Court.   *See id.* at 979-84; *compare* 130 S. Ct. at 1426 & n.5 (describing *Gartenberg* standard and non-exclusive factors).

As the Supreme Court later instructed, this Court assessed the quality of the Board's consideration without elevating it to a stand-alone basis for finding violations of Section 36(b).   After extensively analyzing the Board's process, and determining that the Board was conscientious and independent, *see* 497 F. Supp. 2d at 976-77, 983, the Court treated the fairness of the negotiation as one of the *Gartenberg* factors, not as an independent basis for liability, *id.* at 983; *compare* 130 S. Ct. at 1429 ("Where a board's process for negotiating and reviewing investment-adviser compensation is robust, a reviewing court should afford commensurate deference to the outcome of the bargaining process."); *id.* at 1429-30 (emphasizing that board's process is only one consideration in determining ultimate question of whether the fee meets *Gartenberg*'s "so disproportionate" standard).

14

This Court also took the same view as the Supreme Court about the comparison of Fund fees with those charged to institutional accounts.  This Court did not hold that the comparison was either dispositive *or* irrelevant.  Rather, the utility of any comparison depends on whether the record reveals "competent evidence demonstrating a factual predicate for Plaintiffs' assertion that Defendants are charging other clients different fees for the same services."  497 F. Supp. 2d at 982.  *See also id.* (quoting *Gartenberg* holding that other types of accounts cannot provide apt comparison where the nature and extent of services required are different); *compare* 130 S. Ct. at 1429 ("If the services rendered are sufficiently different that a comparison is not probative, then courts must reject such a comparison."); *id.* at 1429 n.8 (holding that even where differences in services cannot explain differences in price, there must be other evidence in order to create a material dispute of fact about whether there has been a breach of Section 36(b)).  In short, to be probative, an "apples-to-apples" predicate for comparison must exist.  But here, the plaintiffs' flunked that foundational condition.  They did not raise a genuine dispute of material fact because "Plaintiffs have not demonstrated that the services provided to the different types of funds are comparable."  497 F. Supp. 2d at 982.

This Court treated comparisons with other mutual funds in the same way – as relevant to, but not dispositive of – the ultimate question whether fees were "so disproportionately large that they . . . could not have been the product of arm's-length bargaining."  *See id.*  In short, this Court did precisely what the Supreme Court later said it should do – *i.e.*, determine whether "services rendered are sufficiently different that a comparison is not probative," be "wary of inapt comparisons," and "reject such a

comparison" if a foundation for the contrast does not exist.  130 S. Ct. at 1429.  This Court recognized – as the Supreme Court later explicitly said – that a trial is appropriate "[o]nly where plaintiffs have shown a large disparity in fees that *cannot* be explained by the different services *in addition to other evidence* that the fee is outside the arm's-length range."  *Id*. at 1429 n.8 (emphasis added).  Since the plaintiffs here did neither – adducing no evidence of fee disparity unexplainable by different services, *and* proffering no evidence the negotiated fee was beyond what could have been fairly bargained – its award of summary judgment to Ameriprise precisely anticipated the Supreme Court's words.

It is not surprising that this Court and the Supreme Court adopted the same standard, and employed similar reasoning, since they both looked to the same source: *Gartenberg*.  This is the source that courts, companies, and regulators have looked to for over 25 years.  *See* 130 S. Ct. at 1425.  There is no basis for any argument that the Supreme Court disregarded certain parts of the *Gartenberg* analysis when adopting it by name and embracing its ultimate test *verbatim*.

## II. The Rationale of the Eighth Circuit's Decision Does Not Survive the Supreme Court's Decision in *Jones*

Because the Supreme Court vacated the Eighth Circuit's opinion, that opinion is no longer controlling precedent or law of the case.  But even beyond the technical status of the Eighth Circuit's opinion, the decision's rationale is no longer valid persuasive authority in light of *Jones*.  That is particularly so because the Eighth Circuit recognized that this Court's judgment was correct under the traditional *Gartenberg* standard, which

the Supreme Court reaffirmed as the sole governing standard.  Summary judgment should therefore be reinstated.

### A.      The Eight Circuit's Novel Process-Based Standard for Liability Under Section 36(b) Is Inconsistent with *Jones*

In reversing this Court's decision, the Eighth Circuit specifically held that this Court's opinion was correct under the traditional *Gartenberg* standard.  The Court of Appeals agreed that this Court had "properly applied the *Gartenberg* factors for the limited purpose of determining whether the fee itself constituted a breach of fiduciary duty" and recognized that "Ameriprise's fee passed muster under the *Gartenberg* standard."  561 F.3d at 823.  The Eighth Circuit parted company with this Court because the Court of Appeals believed that the "limited" inquiry whether the adviser "fee itself constituted a breach of fiduciary duty" under the *Gartenberg* standard did not resolve the question whether there were "other possible violations of § 36(b)" based on "the adviser's conduct during negotiation."  *Id.* at 823-24.  The Supreme Court's decision in *Jones* makes clear that the alleged excessiveness of the "fee itself" under *Gartenberg*'s standard *is* the sole inquiry in assessing liability under Section 36(b).  Given the Eighth Circuit's agreement with this Court that Ameriprise's fees did not violate the *Gartenberg* standard, the only appropriate step is to reinstate the judgment.

The Eighth Circuit's adoption of a process-focused standard for liability under Section 36(b) relied in significant part on the Seventh Circuit holding in *Jones v. Harris Assocs.*, 527 F.3d 627 (2008), that an adviser could breach its fiduciary duty solely through its conduct in negotiation, independent of the resulting fee.  *See Gallus*, 561 F.3d

17

at 823 (holding that *Gartenberg* demonstrates one way an "adviser can breach its fiduciary duty; but it is not the only way," and that "[a]s did the Seventh Circuit, we read the plain language of § 36(b) to impose on advisers a duty to be honest and transparent throughout the negotiation process"). The panel went on to hold that "the proper approach to § 36(b) is one that looks to both the adviser's conduct during negotiation and the end result . . . . Unscrupulous behavior with respect to *either* can constitute a breach of fiduciary duty." *Id.* (emphasis added). It was solely with respect to this process-based theory of liability that the Eighth Circuit concluded that disputed issues of material fact existed that precluded summary judgment: disputes concerning "whether Ameriprise purposefully omitted, disguised, or obfuscated information that it presented to the Board about the fee discrepancy between different types of clients." *Id.* at 824.

In light of the Supreme Court's adoption of *Gartenberg* as the sole test of liability under Section 36(b), the Eighth Circuit's reasoning is no longer tenable. The Supreme Court made clear that the *Gartenberg* test is mandatory and exclusive. The Court explained that "*Gartenberg* was correct in its basic formulation of what § 36(b) *requires*: to face liability under § 36(b), an investment adviser *must* charge a fee that is so disproportionately large that it bears no reasonable relationship to services rendered and could not have been the product of arm's length bargaining." *Jones*, 130 S. Ct. at 1426 (emphases added). *See also Curran v. Principal Mgmt. Corp., LLC*, No. 4:09-cv-00433, 2010 WL 2889752, at *10 (S.D. Iowa June 8, 2010) (rejecting argument for new theory of liability under § 36(b) because, "in *Jones*, the Supreme Court made clear that the basis of liability under § 36(b) is 'a fee that is so disproportionately large that it bears no

reasonable relationship to the services rendered and could not have been the product of arm's length bargaining'" (citation omitted)).

In rejecting the Seventh Circuit's analysis, the Supreme Court made clear that there is no "process-only" basis for violating Section 36(b).  Although the petitioners argued that a "fiduciary duty" in other contexts, such as trust law, supported the conclusion that Section 36(b) could be violated solely through a lack of candor, the Supreme Court rejected that notion, holding that "[t]he *Gartenberg* approach *fully incorporates* [*Pepper*'s] understanding of the fiduciary duty."  *Jones*, 130 S. Ct. at 1427 (emphasis added).  Pointedly, the Supreme Court explained that "[b]y focusing almost entirely on the element of disclosure [to show a breach of § 36(b)], the Seventh Circuit panel erred.  The *Gartenberg* standard . . . accurately reflects the compromise that is embodied in § 36(b)."  *Id.* at 1430 (citation omitted).  *Cf. In re Am. Mut. Funds Fee Litig.*, No. cv 04-5593, 2009 WL 5215755, at *43 (C.D. Cal. Dec. 28, 2009) ("[T]o the extent *Gallus* purports to create a cause of action based on something other than a breach of duty in relation to management's compensation, it appears to establish a duty not contemplated by Section 36(b).").  The Eighth Circuit's conclusion that Section 36(b) requires that the adviser's conduct during the negotiation "be evaluated independent from the result of the negotiation," 561 F.3d at 824, does not survive the Supreme Court's holding.

This is not to say that conduct during board negotiations plays *no* part in the Section 36(b) analysis.  As the Supreme Court explained, "an adviser's compliance or noncompliance with its disclosure obligations is a factor that must be considered in

calibrating the degree of deference that is due a board's decision to approve an adviser's fees." *Jones*, 130 S. Ct. at 1430.  But as the Supreme Court stated in the very next line, "[i]t is also important to note that the standard for fiduciary breach under § 36(b) does not call for judicial second-guessing of informed board decisions." *Id.*  The expertise, diligence, independence, and knowledge of the board is one factor in determining whether the ultimate standard has been met – but it is not an independent cause of action. *See id.* at 1429-30 (explaining that courts examining this factor must still make a "determination . . . based on evidence that the fee 'is so disproportionately large that it bears no reasonable relationship to the services rendered and could not have been the product of arm's length bargaining'"); *id.* at 1427 (explaining that the *Gartenberg* standard takes into account the line of case law calling for fairness in process, by requiring that factor to be considered); *id.* at 1426 n.5 (identifying as one of the six *Gartenberg* factors, "(5) the independence, expertise, care, and conscientiousness of the board in evaluating adviser compensation").

It follows that the Eighth Circuit's remand for review of "material questions of fact" on the issue of "whether Ameriprise purposefully omitted, disguised, or obfuscated information that it presented to the Board about the fee discrepancy between different types of clients," as part of a mandated evaluation of "Ameriprise's conduct . . . *independent* from the result of the negotiation," would be a futile exercise.   In light of the Eighth Circuit's holding that "Ameriprise's fee passed muster under the *Gartenberg* standard," 561 F.3d at 823, an evaluation "independent from the result" is flatly prohibited by the Supreme Court's adoption of *Gartenberg.*  And it is flatly inconsistent

with the Supreme Court's directive that unexplained discrepancies between institutional and other fees warrant trials "only" when presented as factual issues "in addition to *other evidence* that the fee is outside the arm's-length range."  That is because, under *Jones,* it is always the case that "plaintiffs bear the burden in showing that fees are beyond the range of arm's-length bargaining."  130 S. Ct. at 1429 n.8.  Reliance on "process" issues simply cannot relieve them from that burden, or distract from the court's role to apply that ultimate standard.

In short, because the plaintiffs here did not produce any evidence that the negotiated fee was "outside the arm's-length range," whether or not the Board had all the information the plaintiffs claim in hindsight they should have examined is not material.  Since the Court's function is not to "engage in a precise calculation of fees," or conduct "judicial second-guessing" of board decisions, whether a fee that *is* within the arm's-length range might have been higher or lower if some tidbit of data had been shared is beside the point.  Since any factual issue about the integrity of Ameriprise's disclosures to the board could not influence the plaintiffs' burden to show in the instance that the negotiated fee was "outside the arm's-length range" – an issue on which the Eighth Circuit confirmed that the Court "properly applied" *Gartenberg* – further inquiry on that subject is fruitless.

### B.   The Weight the Eighth Circuit Attributed to the Comparison Between Mutual Fund and Institutional Account Fees Does Not Survive *Jones*

As noted above, the Eight Circuit's opinion reversing summary judgment specifically remanded for this Court to consider "whether Ameriprise purposefully

omitted, disguised, or obfuscated information that it presented to the Board about the fee discrepancy between different types of clients." *Gallus*, 561 F.3d at 824.  As discussed above, the Court of Appeals' suggestion of a process-only violation of Section 36(b) does not survive the Supreme Court's decision *Jones*.  It is also clear that the Eighth Circuit's focus on the fees charged to an adviser's institutional clients is inconsistent with the way the Supreme Court treated that same factor.  Whereas the Eighth Circuit's opinion singles out institutional account fees, suggesting that such fees "determine what the investment advice is worth," *id.*, the Supreme Court rejected the contention that institutional account fees are entitled to any special weight, but rather clarified that they are only one factor in the *Gartenberg* analysis – and only to the extent they are supported by a factual predicate of comparable services.

The comparison between mutual fund and institutional account fees was the sole factual issue on which the Eighth Circuit disagreed with this Court's analysis.  The Eighth Circuit did not disagree with this Court that the plaintiffs had not demonstrated a dispute of material fact about whether the comparison demonstrated that Ameriprise's fees passed muster under *Gartenberg*; indeed the panel explicitly agreed with this Court's *Gartenberg* analysis.  Rather, the Court of Appeals determined that there were disputed issues of fact as to whether Ameriprise had obfuscated information that would show the Board that the services offered were the same, while the fees differed.  *See, e.g.*, *id.* at 823 (holding that while this Court's analysis of the *Gartenberg* factors as applied to the level of fees was correct, this Court "erred in rejecting a comparison between the fees charged to Ameriprises's institutional clients and its mutual fund clients").  To reach the

necessary preliminary determination that the comparison could even be relevant, the Court of Appeals appeared to treat institutional account fees as a direct proxy for what mutual fund fees should be: "We are also unpersuaded by the assertion that the fee disparity simply reflects what different investors are willing to pay.  The purpose of an inquiry into the fees paid by institutional, non-fiduciary clients is to determine what the investment advice is *worth*."  *Id.* at 824 (emphasis added).

The Supreme Court flatly rejected the suggestion – advanced by the *Jones* plaintiffs, *see* Pet. Br. at 30 n.21, 31, *Jones*, 130 S. Ct. 1418 (No. 08-586) – that institutional account fees should play such a determinative role.  The Supreme Court adopted the view reflected in *Gartenberg* that courts should "give [the] comparisons the weight that they merit in light of the similarities and differences between the services that the clients in question require," while stressing that "[i]f the services rendered are sufficiently different that a comparison is not probative, then courts must reject such a comparison."  130 S. Ct. at 1428-29.  Contrary to the Eighth Circuit's statement that district courts must necessarily consider institutional fees to determine what an adviser's services are "worth," the Supreme Court held that "[e]ven if the services provided and fees charged to an independent fund are relevant, courts should be mindful that the Act does not necessarily ensure fee parity between mutual funds and institutional clients *contrary to petitioners' contentions*."  *Id.* at 1429 (emphasis added); *compare* Pet. Br. at 31 (quoting *Gallus* for proposition that purpose of comparison "is to determine what the investment advice is worth").  *See also* 130 S. Ct. at 1430 ("[T]he Act does not require courts to engage in a precise calculation of fees representative of arm's-length bargaining

. . . . Congress rejected a 'reasonableness' requirement that was criticized as charging the courts with rate-setting responsibilities."). Significantly, the Supreme Court, unlike the Eighth Circuit, recognized the differences in market circumstances between the clients, observing that "there may be significant differences between the services provided by an investment adviser to a mutual fund and those it provides to a pension fund which are attributable to the greater frequency of shareholder redemptions in a mutual fund, the higher turnover of mutual fund assets, the more burdensome regulatory and legal obligations, and higher marketing costs." *Id.* at 1428-29 (citing *Jones*, 527 F.3d at 634).

Moreover, the Supreme Court stressed that, contrary to the suggestion of the Eighth Circuit, even where a fee disparity is established, it would not provide an independent basis for denying summary judgment in favor of the adviser. Under the Eighth Circuit's opinion, a factual dispute about the adviser's disclosures concerning the comparison between mutual fund and institutional clients' fees is itself a sufficient basis to overturn summary judgment. The Supreme Court, by contrast, held that, under the *Gartenberg* standard, even a large disparity between those fees would not preclude summary judgment in the absence of further evidence. To begin, "a showing of relevance requires courts to assess any disparity in fees in light of the different markets for advisory services." *Jones*, 130 S. Ct. at 1429 n.8. Moreover, "[o]nly where plaintiffs have shown a large disparity in fees that cannot be explained by the different services *in addition to other evidence that the fee is outside the arm's-length range* will trial be appropriate." *Id.* (emphasis added). Thus, even where the advisory services are the

same, this comparison cannot be the sole reason to deny summary judgment.  The Eighth

Circuit's contrary analysis does not survive the Supreme Court's decision in *Jones*.

## **CONCLUSION**

For the foregoing reasons and those set forth in the prior summary judgment

briefing, Ameriprise respectfully requests that this Court reinstate summary judgment in

its favor.

Dated:  September 1, 2010                  Respectfully submitted,


By: s/ Robert A. Skinner
John D. Donovan, Jr. (admitted *pro hac vice*)
Robert A. Skinner (admitted *pro hac vice*)
Benjamin S. Halasz  (admitted *pro hac vice*)
ROPES & GRAY, LLP
One International Place
Boston, MA  02110
Telephone:  617-951-7000
Fax: 617-951-7050

Robert L. Schnell, Jr.
Bar No. 97329
FAEGRE & BENSON LLP
90 South Seventh Street
Minneapolis, MN  55402
Telephone:  612-766-7000
Fax:  612-766-1600

*Attorneys for Defendants*